UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUNTRUST BANKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BE YACHTS, LLC et al., <br><br> Defendants. | CASE NO. C18-840 <br><br> ORDER ON DEFENDANTS' MOTION FOR SANCTIONS; <br><br> DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; <br><br> PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendants Be Yachts, LLC and Edward Balassanian's Motion for Sanctions (Dkt. No. 32), Plaintiff SunTrust Banks Motion for Summary Judgment (Dkt. No. 30), and Defendants' Motion for Partial Summary Judgment (Dkt. No. 25). The Court has reviewed the Motions, the Responses (Dkt. Nos. 39, 43, 31), the Replies (Dkt. Nos. 40, 44, 36), Plaintiff's Surreplies (Dkt. Nos. 38, 42), and all related papers.

//

//

**Background**

On January 9, 2013, Defendants Edward Balassanian and Be Yachts, LLC borrowed $1,800,000 from Plaintiff, SunTrust Banks, Inc., to purchase a 2012 Sunseeker International Manhattan 63 Motor Yacht, which was named the "Just Be." (Dkt. No. 30, Ex. 2, declaration of Brandy Thore ("Thore Decl."), ¶ 4.)  On February 12, 2016, after Defendants defaulted on the loan, SunTrust repossessed the Yacht.  (Dkt. No. 25, Declaration of Anna Johnsen, ("Johnsen Decl."), Ex. 5.)  The unpaid principal balance at the time was $1,689,187.97.  (Thore Decl., ¶ 5, Ex. 5.)

1. Storage and Care

Plaintiff hired Nielsen Beaumont Marine, Inc. ("Nielsen Beaumont") to manage the repossession.  (Id., ¶ 6.)  In turn, Nielsen Beaumont hired Marine Lender Services, LLC, d.b.a. Waypoint Marine Group ("Waypoint Marine") to move the Yacht to their dock in Seattle.  (Dkt. No. 30, Ex. 4, Declaration of Buck Fowler ("Fowler Decl."), ¶¶ 8-10.)  When Waypoint Marine took possession, it noted the overall condition of the Yacht was excellent.  (Id., Ex. 3.)  But when Mr. Balassanian visited the Yacht in February and August, he observed that it was disconnected from power and noticed the "stench of mildew" as he walked onto the boat.  (Dkt. No. 43, Ex. 4, Declaration of Edward Balassanian in support of Defendants' Response to Plaintiff's Motion for Summary Judgment ("2d. Balassanian Decl."), ¶¶ 2-5, 14.)

Several of Mr. Balassanian's employees also noticed mold, dirt, or "steamy windows," when visiting the Yacht while it was in Waypoint Marine's care.  (Dkt. No. 43, Ex. 2 (Declaration of Fred Robinson ("Robinson Decl."), ¶¶ 8-9; Dkt. No. 43, Ex. 3, Declaration of John Brandenfels ("Brandenfels Decl.") at 2; Dkt. No. 43, Ex. 5, Declaration of Cathryn Carpenter, ("Carpenter Decl."), Ex. 1.)  From April 2016 to May 2017 Waypoint Marine ran the

1  Yacht's engine and generator and cleaned the vessel once a month. (Id., ¶ 16, Ex. 6.) In January
2  2017, the Yacht's generator began to overheat, and Nielsen Beaumont paid to have it repaired.
3  (Id., Ex. 7.)

4        2.  Initial Survey and Marketing

5  Upon Mr. Balassanian's request, SunTrust commissioned his preferred surveyor, Bill
6  Evans, to conduct a survey of the Yacht. (Thore Decl., Ex. 8.) Mr. Evans determined the Yacht
7  was "apparently well kept" and in "above average" condition, estimating its fair market value to
8  be between $1,500,000 and $1,700,000. (Thore Decl., Ex. 8.) Mr. Evans estimated that a sale
9  could take place in six months to a year and bring 90% of a conservative asking price, but
10 "[d]istress sales or forced liquidation sales vessels may entertain offers 60 to 70 percent of
11 asking price." (Id., Ex. 8 at 9.)

12 Nielsen Beaumont then appointed Rick Young of Silver Seas Yachts as sales broker for
13 the Vessel. (Dkt. No. 30, Ex. 3, Declaration of Rick Young ("Young Decl."), ¶ 19.) Mr. Young
14 is licensed in California and Florida, but contends he is not required to obtain a license in
15 Washington because he brokered less than five yachts in the State for the years 2016 and 2017.
16 (Young Decl., ¶ 7.) Mr. Young listed the Yacht on several websites including Yachtworld, Boat
17 Trader, Silver Sea Yachts, Skipperbud, Sea Magazine, and Boats.com. (Young Decl., ¶ 17.)

18       3.  Offers and Final Survey

19 Between March 17 and July 22, 2016 SunTrust received four offers between $1,000,000
20 and $1,225,000, but all of them fell through. (Thore Decl., ¶¶ 21-22, 25-26.) SunTrust then
21 entered the Yacht in the Seattle Boat Show on September 10-19, 2016. (Thore Decl. ¶ 27.)
22 During the show, SunTrust received offers from Arthur Aslanian for $1,000,000 and from Dean

23

24

and Stacy Jones for $1,050,000.  (Thore Decl. ¶ 28.)  SunTrust accepted the Jones' offer.  (Thore Decl. ¶ 29, Ex. 24.)

In January 2017, the Jones' commissioned a pre-purchase condition and valuation survey by Bill Evans.  (Dkt. No. 30, Ex. 5, Declaration of Isaak Hurst ("Hurst Decl."), ¶ 3, Ex. 3 at 4-26.)  Mr. Evans again rated the Yacht "above average" and valued it at $1,500,000.  (Id. at 5.)  While again noting that the Yacht was "apparently well kept," Mr. Evans wrote that the guest room units cool but do not heat and the generator would not stay running.  (Id. at 5, 13.)  The sale of the Yacht was finalized on March 10, 2017 for $1,050,000.  (Thore Decl. ¶ 30.)  On March 24, 2017 SunTrust informed Mr. Balassanian that the Yacht had been sold and he owed $857,979.60.  (Id., Ex. 25.)

On June 11, 2018, Plaintiff filed a complaint, asserting claims for breach of contract and breach of the implied duty of good faith and fair dealing.  (Dkt. No. 1 ("Compl."), ¶¶ 30-40.)  Defendants Mr. Balassanian and his company, Be Yachts, LLC, asserted counterclaims for failure to use reasonable care in the preservation of collateral, failure to hold a commercially reasonable sale, and for damages and rights under RCW 62A.9A-625 or UCC § 9-625.  (Dkt. No. 8, ¶¶ 4.1-5.11.)

**Discussion**

This Order will address the Parties' five pending motions: (1) Plaintiff's Request for Judicial Notice (Dkt. No. 31, Ex. 3); (2) Defendants' Motion for Sanctions (Dkt. No. 32); (3) Plaintiff's Motion for Summary Judgment (Dkt. No. 30); (4) Defendants' Motion for Partial Summary Judgment (Dkt. No. 25); and (5) Plaintiff's Motions to Strike (Dkt. Nos. 38, 42.)

**I.        Judicial Notice**

1    As a preliminary matter, Plaintiff requests that the Court take judicial notice of the Initial
2    Report of the entity Be Yachts, LLC, filed on January 28, 2013 with the Washington Secretary of
3    State. (Dkt. No. 31, Ex. 3.) The document includes a notation that the Yacht was "Service
4    Investment Related" and is signed by Mr. Balassanian. (Id. at 6.)

5    The Court may take judicial notice of facts that are "not subject to reasonable dispute,"
6    Fed. R. Evid. 201(b), as well as documents that are referred to in the complaint, that are central
7    to the Plaintiffs' claims, and whose authenticity is undisputed. See, e.g., Branch v. Tunnell, 14
8    F.3d 449, 454 (9th Cir.1994), overruled on other grounds by Galbraith v. County of Santa Clara,
9    307 F.3d 1119, 1127 (9th Cir. 2002). Here, Plaintiff presents an "Initial" document presumably
10   created by Defendant, not an "official record of the Washington Secretary of State," as argued.
11   (Dkt. No. 31, Ex. 3 at 1.) Just as the Court will not take judicial notice of a party's filing on this
12   Court's docket, the Court will not take judicial notice of Defendant's Initial Report because it is
13   not a government record and the information contained within is "subject to reasonable dispute."
14   Plaintiff's request is DENIED.

15   **II.    Motion for Sanctions**

16   Defendants move for sanctions based on Plaintiff's "knowingly incorrect, misleading,
17   and incomplete" discovery responses and fruitless 30(b)(6) deposition, asking the Court to rule:
18   (1) that SunTrust's claims be dismissed; (2) that the lately disclosed evidence be excluded;
19   and/or (3) the Court impose monetary sanctions in the form of attorney's fees and costs. (Dkt.
20   No. 32 at 1.) Defendants also request that the Court either bind SunTrust to its original 30(b)(6)
21   deposition testimony or compel it to provide an additional 30(b)(6) witness at its own expense.

22   **A. Discovery Requests**

1          Defendants allege that Plaintiff failed to disclose Rick Young as the broker or to produce

2   relevant documents regarding the storage, maintenance, and repair history of the Yacht until the

3   night before the deadline for discovery motions. (Dkt. No. 32 at 2-3.) According to Defendants,

4   Plaintiff produced these documents for the first time on December 16, 2019 even though

5   Defendants requested this information in September 2018. (Id. at 3. n. 7-10.) But Plaintiff

6   presents ample evidence that the "newly" produced documents were in fact produced no later

7   than February 2019, providing a list of the Bates numbers for each of these documents that show

8   Defendants had the relevant information eight months earlier than claimed. (Dkt. No. 39 at 5-6;

9   2d. Hurst Decl., ¶¶ 9-11; Fowler Decl., Ex. 4.)

10         In particular, Defendants make much of Plaintiff's failure to identify Rick Young as the

11  broker in response to Defendants' September 2018 interrogatories. (2d. Johnsen Decl., Ex. 1 at

12  2.) But SunTrust's initial disclosures included the Jones' purchase agreement listing Rick Young

13  as the broker. (2d Hurst Decl., Ex. 1 at 3.) Indeed, Defendants knew that Mr. Young was the

14  broker on February 18, 2019, when Defendants' counsel confirmed that Plaintiff's counsel had

15  "verbally identified two new entities (Rick Young and Denison) . . . that had not been disclosed

16  previously, stating that [he] believed these two new entities were actually the brokers." (Dkt.

17  No. 40, Ex. 1 at 13.) And on February 19, Plaintiff's counsel rejected Defendants' assertion that

18  they just learned the identity of the broker, writing, "Rick Young, the broker of the JUST BE, is

19  specifically named in multiple documents from the initial disclosures which you've possess[ed]

20  since August 2018." (Dkt. No. 31 at 80; Dkt. No. 40, Ex. 3.) Defendants' assertion in their

21  Motion that "[l]ast night SunTrust finally disclosed its unlicensed broker" is not supported by the

22  record. (Dkt. No. 32 at 2)

23

24

1   Because Defendants have not demonstrated that Plaintiff failed to produce the requested
2   information, Defendants' Motion for Sanctions is DENIED.

**B. 30(b)(6) Witness**

On February 22, 2019 Defendants conducted a Rule 30(b)(6) deposition of SunTrust's witness. (2d Johnsen Decl., ¶¶ M, Q.) It did not go well. SunTrust's witness answered "I don't know" 75 times and was unable to provide any relevant information. (Id.; Dkt. No. 43, Ex. 1, Declaration of Anna Johnsen ISO Response to Plaintiff's Motion for Summary Judgment ("3d Johnsen Decl."), Ex. 1.) She was unable to identify the brokerage firms SunTrust used, did not know the sales commission SunTrust paid, did not know the date when the Yacht was sold, and had no familiarity with any repairs done to the Yacht. (Id. Ex. 1; 2d Hurst Decl, Ex. 5 at 69:22 24, 71:6 9.) Defendants have asked SunTrust if it would provide an additional 30(b)(6) witness at least five times since the deposition; SunTrust has not done so. (Id., ¶ R.)

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose a corporate entity through a designated representative. "When a corporation designates a person to testify on its behalf and the agent is not knowledgeable about relevant facts, then the appearance is, for all practical purposes, no appearance at all." Discovery Proceedings in Federal Court § 22:9 (3d ed.) Because Plaintiff's witness was not prepared to answer even basic questions about the facts here, Plaintiff must provide one or more additional 30(b)(6) witnesses at its expense who will testify for the corporation. See, e.g., Treemo, Inc. v. Flipboard, Inc., No.-1218-JPD, 2014 WL 12029197, at *1 (W.D. Wash. Jan. 14, 2014) (holding that when a 30(b)(6) witness demonstrates a "lack of knowledge on relevant topics" the corporation must produce another witness at its expense). The additional depositions should occur as soon as possible but not later than 21 days from the date of this Order.

**III. Motions for Summary Judgment**

**A. Legal Standard**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant bears the initial burden to demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine dispute over a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986). On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990).

**B. Defendants' Motion for Summary Judgment**

Defendants ask the Court to determine, as a matter of law, that the sale of the Just Be was not commercially reasonable on either of the following grounds: (1) The broker, Rick Young, was not licensed in the State of Washington making the sale illegal, or (2) SunTrust lacks the evidence to establish that the sale was commercially reasonable. (Dkt. No. 25.) The Court finds that neither argument is supported by the relevant law or the record.

First, Defendants have not demonstrated that Mr. Young's failure to hold a license made the sale per se unreasonable. Under RCW 62A.9A-627(b), a disposition of collateral is made in a commercially reasonable manner if the disposition is made:

    1) In the usual manner on any recognized market;

    2) At the price current in any recognized market at the time of the disposition; or

    3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.

Defendants' brief fails to link broker licensing requirements to any of the items on this list. Nor have they explained how Mr. Young's license would relate to the fundamental purpose of the commercial reasonableness requirement, which is to obtain a fair sales price in order to reduce the deficiency judgment. Sec. State Bank v. Burk, 100 Wash. App. 94, 99 (2000) (quoting 4 James J. White and Robert S. Summers, Uniform Commercial Code § 34-10, at 430 (4th ed.1995)).

  Plaintiff has also submitted enough evidence showing that the sale of the Yacht was commercially reasonable. "When the propriety of the disposition of collateral by the secured party is contested, the issue of commercial reasonableness is a question of fact to be determined by the trier of fact." Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank, 18 Wash.App. 569, 587 (1977) (citing Jones v. Morgan, 58 Mich.App. 455 (1975). "Such traditionally factual questions should be determined as a matter of law only in the 'clearest of cases.'" Service Chevrolet, Inc., 99 Wash.2d at 205, 660. This is not "the clearest of cases."

  In determining whether a sale was commercially reasonable, the Court will evaluate Plaintiff's "efforts to reach segments of the public reasonably expected to have an interest in bidding" and determine whether the creditor "engaged in an analysis to determine a fair market price." Rotta v. Early Indus. Corp., 47 Wash. App. 21, 25 (1987). Plaintiff has presented significant evidence of both elements. The Yacht was listed on several websites including Yachtworld, Boat Trader, Silver Sea Yachts, Skipperbud, Sea Magazine, and Boats.com, and SunTrust entered the Yacht in the Seattle Boat Show. (Young Decl., ¶ 17; Thore Decl. ¶ 27.)

  Plaintiff also commissioned a survey by Defendants' preferred surveyor. That survey estimated the Yacht's price to be between $1,500,000 and $1,700,000 but noted that "[d]istress

sales or forced liquidation sales vessels may entertain offers 60 to 70 percent of asking price."
(Thore Decl, Ex. 8 at 9.) Plaintiff obtained a final sale price of $1,050,000, which fell within the surveyor's estimated price range for a distressed sale of $900,000 to $1,190,000. (Thore Decl. ¶ 30.) And the other offers also support the surveyor's estimated range. Although initially listing the Yacht at $1,700,000 (Thore Decl., ¶ 20, Ex. 12) and then lowering the price to $1,400,000 (Id., Ex. 9 at 5), five of the six offers SunTrust received were between $1,000,000 and $1,100,000. (Thore Decl., ¶¶ 21-22, 25-26, 28-29.) The highest offer, $1,225,000 from Alberto Kamhazi, fell through when Mr. Kamhazi could not obtain the necessary financing. (Id., ¶ 22.)

Because Plaintiff has produced sufficient evidence that the sale was commercially reasonable, Defendants' Motion is DENIED.

**C. Plaintiff's Motion for Summary Judgment**

Plaintiff moves for summary judgment on its claim for breach of contract and on Defendants' counterclaims for failure to use reasonable care in the preservation of collateral and failure to hold a commercially reasonable sale. (Dkt. No. 30.)

1. Breach of Contract

Plaintiff argues it is entitled to summary judgment on its breach of contract claim because Defendants have admitted to defaulting on the loan. (Dkt. No. 32 at 2.) But as discussed below, Defendants present evidence that creates a genuine issue of material fact regarding the commercial reasonableness of the sale of the Yacht. Plaintiff's Motion is therefore premature because Plaintiff cannot establish damages until the "deficiency is determined by deducting the proceeds of sale from the outstanding debt." Burk, 100 Wash. App. at 99.

2. Preservation of Collateral

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

1       Plaintiff also seeks summary judgment on Defendants' counterclaim for failure to
2  preserve the Yacht.  Under RCW 62A.9A-207 Plaintiff was required to use reasonable care in
3  the custody and preservation of the Yacht while it was in Plaintiff's possession.  Defendants have
4  presented testimony that the Yacht was not tied up correctly (Robinson Decl., ¶ 5), was left
5  unplugged, had steamy windows (Brandenfels Decl. at 2; Carpenter Decl. at 2), and had grown
6  mold (Robinson Decl., ¶¶ 8-9; 2d. Balassanian Decl., ¶¶ 2-5, 14; Carpenter Decl. at 2).
7       But Defendants have not demonstrated that Plaintiff's alleged lack of care diminished the
8  Yacht's value.  Defendants have also failed to rebut Plaintiff's evidence that the Yacht was
9  well-preserved, with Defendants' hand-picked surveyor estimating that the Yacht was worth
10 $1,500,000 to $1,700,000 immediately after repossession, and worth $1,500,000 after it was in
11 the Plaintiff's care for a year.  (Compare Thore Decl., Ex. 8 with Hurst Decl., ¶ 3, Ex. 3 at 5; see
12 also 3d. Johnsen Decl., Ex. 1 at 29 (Defendants' expert opining that the Yacht depreciates six
13 percent a year, or $102,000 from the initial survey.)  The pre-purchase survey also includes
14 pictures of the Yacht without any visible mold and rates the Yacht in "above average" condition,
15 just as it was when repossessed.  (Id. at 5.)  Because the Court finds that Defendants have not
16 presented evidence of damages, Plaintiff's Motion for Summary Judgment on Defendants'
17 counterclaim for Failure to Use Reasonable Care in the Preservation of Collateral is GRANTED.
18      3. Commercially Reasonable Sale
19      Plaintiff also moves to dismiss Defendants' counterclaim for failure to hold a
20 commercially reasonable sale.  The Court finds that Defendants' evidence creates a genuine issue
21 of material fact.  First, by Plaintiff's own admission "confirm[ing] the brokerage is properly
22 licensed in the state" is an element of a commercially reasonable sale.  (Dkt. No. 36, Ex. 1 at 4.)
23 As discussed above, Mr. Young, who appears to have handled much of the brokerage, was not
24

licensed. (Young Decl., ¶ 7.) Second, Defendants present evidence that Plaintiff did not appropriately advertise the Yacht. Mr. Brandenfels testified that in his experience it is not reasonable to list a boat without simultaneously showing it. (Brandenfels Decl. at 2.) Mr. Reisner concluded the sale was not reasonable here because the broker did not, among other things, have a targeted client list or have the freedom to offer sales commissions in line with the industry standard. (3d. Johnsen Decl., Ex. 1 at 16.) And Defendants' other expert concluded that "the overall advertising effort SunTrust describes is not sufficient." (Id. at 27.) The Court therefore finds that Defendants have presented sufficient evidence in support of their counterclaim.

### D. Plaintiff's Motions to Strike

Plaintiff moves to strike (1) sections of Defendants' Reply brief and supporting declarations regarding Defendants' Motion for Partial Summary Judgment and (2) portions of Defendants' Reply regarding their Motion for Sanctions. (Dkt. No. 38 at 3.)

Under Rule 12(f), the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A Motion to Strike generally will not be granted simply because an allegation is offensive." Luken v. Christensen Grp. Inc., No. C16-5214-RBL, 2016 WL 5920092, at *2 (W.D. Wash. Oct. 11, 2016). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." Id. When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re TheMart.com, Inc. Sec Lit., 114 F Supp.2d 955, 965 (C.D. Cal. 2000). The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. Warshawer v. Tarnutzer, No. C14-1042 RSM, 2015 WL 11921413, at *1 (W.D. Wash. Oct. 30, 2015).

Here, Plaintiff's Motions to Strike are almost exclusively arguments in support of its interpretation of the facts and seek to strike material that is relevant to the Court's analysis. Further, because Plaintiff was able to file additional substantive briefing after the contested Replies, it had ample opportunity to respond to Defendants' arguments. (See Dkt. Nos. 43, 48.) For those reasons, Plaintiff has not met its burden under Rule 12(f) and its Motions to Strike are DENIED.

**Conclusion**

Accordingly, the Court:

(1) GRANTS in part DENIES in part Defendants' Motion for Sanctions (Dkt. No. 32):

    a. Plaintiff must provide an additional 30(b)(6) witness at its own expense within 21 days of the date of this Order; and

    b. The remainder of Defendants' Motion for Sanctions is DENIED;

(2) DENIES Plaintiff's Request for Judicial Notice (Dkt. No. 31, Ex. 3);

(3) DENIES Defendants' Motion for Partial Summary Judgment (Dkt. No. 25);

(4) GRANTS in part DENIES in part Plaintiff's Motion for Summary Judgment:

    a. Defendants' Counterclaim for Failure to Use Reasonable Care in the Preservation of Collateral is DISMISSED;

    b. The remainder of Plaintiff's Motion for Summary Judgment is DENIED;

(5) Plaintiff's Motions to Strike are DENIED (Dkt. Nos. 38, 42).

The clerk is ordered to provide copies of this order to all counsel.

Dated May 5, 2020.

Marsha J. Pechman
United States District Judge